STURGEON (UNITED STATES v.). See Case No. 16,413.

---

## Case No. 13,565.

### In re STURGES et al.

[8 Biss. 79;[1] 16 N. B. R. 304; 10 Chi. Leg. News, 33.]

District Court, N. D. Illinois. Oct., 1877.

BANKRUPTCY — COMPOSITION WITH CREDITORS — VOLUNTARY PAYMENTS.

Where a creditor accepted a failing debtor's offer of compromise, but with a proviso that no other creditor should receive better terms; and the debtor afterwards voluntarily paid some of his other creditors in full: Held, that this did not vitiate the settlement.

In bankruptcy.

S. Sibley, for bankrupts.
Lyman & Jackson, for claimant.

BLODGETT, District Judge. This is an application for a re-examination of a claim proven by the Matthiesson & Hegeler Zinc Co. against the estate of Frank Sturges & Co. in bankruptcy. The claimant insists that in the fall of 1871, the bankrupts were indebted to it in the sum of $4,897.70, on an open account for goods before then sold and delivered to them: that bankrupts sought a composition with their creditors on the basis of fifty cents on the dollar of their indebtedness, and the claimant agreed to accept said terms of composition on condition that no greater sum was to be paid any other creditor. They allege, however, that the bankrupts did pay a larger sum to Phelps, Dodge & Co., and other creditors, whereby claimant became entitled to the payment of the balance of the indebtedness so compromised. Sometime in November last, the firm was adjudicated bankrupt, and this claim is now proven for $3,573.84, being for one-half the original indebtedness, and interest since December 8, 1871, the time when the composition settlement was made.

The proof shows that soon after the great fire in this city on the 9th of October, 1871, the firm of Frank Sturges & Co., who had for many years before that time been engaged in business here as wholesale dealers in metals, found themselves unable to pay

---

[1] [Reprinted from 1 N. B. R. 498 (Quarto, 131), by permisison.]

[1] Reported by Josiah H. Bissell, Esq., and here reprinted by permission.

their debts in full. They offered to pay all creditors, whom they owed over $100, fifty cents on the dollar in full settlement of their respective demands. The creditors all accepted the proposition, and were settled with, and have been paid upon the proposed basis. Among the creditors were the present claimants, who agreed to the terms offered, but with the written understanding "that none of the other creditors, including banks, should receive better terms."

There is no proof showing or tending to show that the bankrupts paid more than fifty per cent. at the time of obtaining this composition, to any of their creditors to whom they owed over $100, with the exception of a firm in Burlington, Iowa, whose claim amounted to $113, and, on learning this fact, the claimants expressed themselves as entirely satisfied with this last transaction —the amount being so small. There is, however, no doubt but what, while negotiating for their settlement, the firm held out to all their creditors that they should consider themselves morally bound to pay in full as soon as they were able. The settlement at fifty per cent., however, was to be a legal acquittal of their indebtedness, and the only obligation to pay the balance was the moral one which any honorable debtor feels or ought to feel.

There is no proof that any creditor was paid more than this claimant in order to effect the settlement, nor that any false statements in regard to the assets and liabilities of the firm were made in order to obtain the settlement.

It does appear from the proof that after the settlement, and after the firm resumed business, and during the latter part of 1872 and the first half of 1873, the firm paid several of their old ante-fire creditors in full, including the Northwestern National Bank, Phelps, Dodge & Co., of New York, Morehead & Co., of Pittsburgh, and others.

The payments to the bank were made, to a considerable extent, by turning out paper, while that to Phelps, Dodge & Co. was made by the way of a sale of a valuable lot and building in this city, owned by Mr. Sturges, which was heavily mortgaged. Phelps, Dodge & Co. assumed the mortgage, and applied the old balance on the amount paid for the equity.

The firm of Morehead & Co. received their payment by way of a trade, in which they took a house and lot in this city belonging to Mr. Lee. one of the firm, and a part of the balance of the old debt was applied on the purchase money. One of the other firms has since received some payments to apply on the old debt by means of extra commissions on business transacted with or for them. All these payments were made after the firm was legally released from the obligations to make them, and no doubt, were made in pursuance of the intention expressed by the firm to pay all their debts as fast as able. The

financial panic of September, 1873, and the subsequent depression in business, has prevented the consummation of this laudable purpose.

The claimant, as well as many others of the firm's old creditors remains unpaid, except as to the sum accepted in composition.

This court has recognized the principle too frequently to require authority, that when a debtor seeks a settlement with his creditors at less than the amount due them, a payment to one, of more than the amount held out as the sum to be paid all, vitiates the transaction and authorizes each creditor to collect his entire debt, or at least, so operates in favor of the creditors imposed upon. But the creditors here make out no such case. What the debtors paid after being legally released, were mere voluntary payments, which could not have been enforced, and although it might seem more in accordance with our ideas of the principles of justice and fair dealing, that when the debtors found themselves able to apply any of their means in payment of their old canceled obligations, they should have done so pro rata, and treated all their creditors alike by making a general dividend; yet I cannot see that their failure to do so, revives the old debts, and makes them liable for the payment of these old debts.

Men released from their debts by the statute of limitations, or as this firm was by a legal composition, may have peculiar personal reasons for acknowledging their moral obligations to one creditor, and afterwards paying him in full, which do not apply to all their creditors, and it would be a harsh rule to say that because a man recognized his moral obligation in one case, it revives a canceled legal obligation toward all his old creditors.

This would make it dangerous for men to recognize moral obligations, for while all debts may be equally binding legally, we know that all men recognize a higher degree of moral obligation to pay some than they do others.

The claim should be expunged.